UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
_____

MILWAUKEE CENTER FOR
INDEPENDENCE, INC.,
    Plaintiff,

  v.                                     Case No. 15-C-1479

MILWAUKEE HEALTH CARE, LLC,
WILLIAM NICHOLSON, and
WILLIAM KOSKI,
    Defendants.
_____

## DECISION AND ORDER

Plaintiff Milwaukee Center for Independence, Inc., brings this action for breach of contract against defendants Milwaukee Health Care, LLC ("MHC"), William Nicholson, and William Koski. The plaintiff alleges that MHC failed to remit funds that it collected from third parties on the plaintiff's behalf. MHC is a Delaware limited liability company, and defendants Nicholson and Koski are its members. Before me now is Nicholson and Koski's motion to dismiss the amended complaint, as it pertains to them, under Federal Rule of Civil Procedure 12(b)(6).

### I. BACKGROUND

According to the allegations of the plaintiff's amended complaint, the plaintiff operates the Nexday Brain Injury Rehab Center (the "BIRC"), which provides care for people recovering from a brain injury or stroke, or who require rehabilitative services because of a disability. Those whom the BIRC assists are not ready to be discharged from inpatient care, and the BIRC's services are designed to enable patients to return home through a community re-entry program. Under Wisconsin licensing and

1

certification requirements, the plaintiff must operate the BIRC within a skilled nursing facility.

Defendant MHC operates a skilled nursing facility known as Wellspring of Milwaukee. Between June 2014 and January 2016, the plaintiff operated the BIRC within the Wellspring facility. Most recently, this was pursuant to a contract between the plaintiff and MHC dated June 1, 2015. Under the contract, the plaintiff agreed to provide the professional and other services necessary to operate the BIRC, and MHC agreed to set aside, for the exclusive use of the BIRC, a designated 18-bed unit at Wellspring. Also under the contract, MHC agreed to bill third parties for the BIRC's services and to remit the amounts collected, less a deduction for the amounts owed to Wellspring, to the plaintiff.

In the complaint, the plaintiff alleges that MHC breached the contract by failing to remit to the plaintiff at least $748,252 in BIRC collections. Discovery relating to this claim is underway. However, besides suing MHC for breach of contract, the plaintiff also sues William Nicholson and William Koski, who are the members of MHC, contending that they are personally liable for the breach. The plaintiff contends that, although members of a limited liability company are not ordinarily liable for the company's obligations, here Nicholson and Koski agreed in the contract to be personally liable for the BIRC collections. Nicholson and Koski have moved to dismiss this claim, contending that, as a matter of law, they are not personally liable for the BIRC collections.

## II. DISCUSSION

To survive a Rule 12(b)(6) motion, plaintiff must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim

2

has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint must, at a minimum, "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. In construing plaintiff's complaint, I assume all factual allegations to be true but disregard statements that are conclusory. *Iqbal*, 556 U.S. 678.

In the present case, the parties agree that Wisconsin contract law applies to their dispute. Under Wisconsin law, a court's primary goal in contract interpretation is to give effect to the parties' intent, as expressed in the language of the contract. *Maryland Arms Ltd. P'ship v. Connell*, 326 Wis. 2d 300, 311 (2010). The court must "interpret the language consistent with what a reasonable person would understand the words to mean under the circumstances." *Id.*

The plaintiff contends that Nicholson and Koski are liable for the BIRC collections because the contract between the plaintiff and MHC contains a clause stating that the "obligations of Facility" (*i.e.*, of MHC) under the contract "shall be binding" on various other persons and entities, including MHC's "members." The full text of this clause is as follows:

> The obligations of Facility contained in this Amended Agreement shall be binding upon Facility, its members, managers, directors, officers, employees, agents, and independent contractors, as well as Facility's successors and assigns (hereinafter defined) regardless of any actual or constructive notice to them.

Am. & Restated Traumatic Brain Injury Servs. Agmt. [hereinafter "Conrtact"] § 21. This "obligations" clause is found within a larger section of the contract containing other general clauses that are ordinarily part of a contract between commercial entities, including an integration clause, a clause forbidding oral modifications, clauses

3

governing waiver of rights under the contract, and a clause prohibiting assignment of a party's rights without the consent of the other party. *Id.*

The obligations clause resembles a typical, boilerplate "successors and assigns" clause. Such clauses usually provide that a contract is "binding upon" and "inures to the benefit of" the parties and their successors and assigns. *See Negotiating and Drafting Contract Boilerplate* 87 (Tina L. Stark ed. 2003). Here, it is clear that the obligations clause was modeled on this type of clause. The difference is that the drafter of the obligations clause expanded the list of persons supposedly bound by the contract beyond merely the parties and their successors and assignees. The list now includes almost any person or entity that is affiliated with MHC—its "members, managers, directors, officers, employees, agents, and independent contractors." Another difference between a typical successors-and-assigns clause and the obligations clause is that the latter refers to only one party's "obligations" and omits any reference to the contract's benefits.

Experts on contract drafting have criticized the typical successors-and-assigns clause, noting that its meaning is unclear and that those who insert it into contracts usually do not know the function it is intended to serve. *See* Stark, *supra*, at 81 (noting that successors-and-assigns clauses are inserted into contracts "almost ritualistically" and that "its function and effect are rarely understood"); Kenneth A. Adams, *It's Time to Get Rid of the "Successors and Assigns" Provision*, The Advocate, June/July 2013, at 30, 31 (stating that successors-and-assigns clause is "a useless provision that survives because drafters are unsure what function it serves and so are loath to get rid of it," and that "it's sufficiently obscure that one can project onto it all sorts of unlikely meanings"); Stephen L. Sepinuck, *Successors & Assigns Clauses*, The Transactional Lawyer, Apr.

4

2014, at 4, 7 (stating that a typical successors-and-assigns clause "serves no clear purpose and can be safely discarded"). These experts have identified five (and sometimes more) potential purposes of such clauses: (1) to bind an assignee to perform the assignor's obligations; (2) to bind a nonassigning party to perform in favor or the assignee; (3) to determine whether the contract permits assignment in the first place; (4) to determine whether performance is delegable; and (5) to bind the parties to the contract. *See* Stark, *supra*, at 84–86. However, the consensus is that the typical successors-and-assigns clause does not achieve most of these goals. *See* Adams, *supra*, at 31; Sepinuck, *supra*, at 5.

In the present case, the alterations made to the typical successors-and-assigns clause to turn it into the "obligations" clause have not made it easier to understand. Perhaps the intended purpose of the obligations clause is similar to the first potential purpose of a typical successors-and-assigns clause, *i.e.*, to bind MHC's successors and assignees, along with the additional persons and entities identified in the clause, to perform MHC's obligations under the contract. However, while it might be possible for MHC's successors or assignees to perform MHC's obligations under the contract, it would be virtually impossible for the other persons identified in the clause to do so. For example, MHC's "employees" would include its janitors. How would a janitor perform all of the obligations assigned to MHC under the agreement, including making an 18-bed unit within a skilled nursing facility available to the plaintiff and billing third parties for the plaintiff's services? Thus, it is not reasonable to think that the parties intended to bind the listed persons and entities to perform the contract. Nor can the clause's purpose be to impose liability for damages on every person identified in the clause in the event of a breach by MHC. The very idea that the parties intended to make MHC's custodial staff

5

personally liable for damages in the event that MHC breached the contract is absurd. Of course, it is not absurd to think that the plaintiff wanted personal guarantees from MHC's members. But the inclusion of the litany of additional persons and entities in the obligations clause makes clear that the parties did not intend for it to operate as a personal guarantee, since no one would reasonably expect a personal guarantee from a party's "employees, agents, and independent contractors."

In any event, even if the purpose of inserting this clause into the contract was to require the identified parties to perform under the contract, courts "generally agree" that a typical successors-and-assigns clause cannot achieve this purpose. *See Kneberg v. H.L. Green Co.*, 89 F.2d 100, 103 (7th Cir. 1937). That is because the parties simply lack the legal power to bind their assignees to a contract to which they are not parties. *Id.* at 103–04; *see also* Adams, *supra*, at 30 (recognizing that notion that successors-and-assigns clause binds the assignee is "contrary to accepted law"). So here, the "obligations" clause does not bind even MHC's assignees, and thus it also does not bind the other nonparties identified in the clause, including MHC's members.

The plaintiff contends that even if the clause cannot bind MHC's assignees and the other persons identified in the clause, it can bind MHC's members, because here one of those members, Nicholson, signed the contract. However, Nicholson's signature on the contract would bind MHC's members only if it had the legal effect of making them parties to the contract. *See E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002) ("It goes without saying that a contract cannot bind a nonparty."). But here it is clear that Nicholson's signing the contract did not make him and Koski parties. The contract's signature block reflects that Nicholson signed the contract in his capacity as the managing member of MHC, not on his own behalf and/or as an agent of Koski. *See*

6

Contract at p. 22. No other provision of the contract suggests that Nicholson and Koski are parties. To the contrary, the very first sentence of the contract states that it is "made and entered into . . . by and between" the plaintiff and MHC. *Id.* at 1. The sentence even specifies that MHC is "a Delaware limited liability company." And the contract's second sentence identifies the "Parties" to the contract as the plaintiff and MHC. *Id.* Thus, Nicholson and Koski are not parties to the contract, and therefore even if the purpose of obligations clause had been to make them personally liable for MHC's breach (which I doubt), it does not have that effect.

### III. CONCLUSION

For the reasons stated, **IT IS ORDERED** that Nicholson and Koski's motion to dismiss is **GRANTED**.

Dated at Milwaukee, Wisconsin, this 9th day of June, 2016.

        s/ Lynn Adelman
        _____
        LYNN ADELMAN
        District Judge