# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

___

**MILWAUKEE CENTER FOR**
**INDEPENDENCE, INC.,**
      Plaintiff,

     v.                                           Case No. 15-C-1479

**MILWAUKEE HEALTH CARE, LLC and**
**WILLIAM NICHOLSON,**
      Defendants.

___

## DECISION AND ORDER

On December 8, 2017, I decided the parties' cross-motions for summary judgment on liability. Before me now is the plaintiff's motion for summary judgment on damages.

## I. BACKGROUND

The facts of this case are described in detail in my order on liability. Here, I will restate the facts that are relevant to my discussion of the plaintiff's damages motion.

Between June 2014 and February 2016, plaintiff Milwaukee Center for Independence ("MCFI") operated the Nexday Brain Injury Rehab Center (the "BIRC") in Milwaukee, Wisconsin. The BIRC was a rehabilitation facility for individuals recovering from brain injuries or neurological diseases. Its services included physical and occupational therapy, speech language pathology, and vocational rehabilitation.

Under Wisconsin law, a facility such as the BIRC had to be operated within a licensed nursing home. Between June 2014 and February 2016, the BIRC was operated as an 18-bed unit within a 185-bed nursing home known as Wellspring of Milwaukee. One of the defendants, Milwaukee Health Care, LLC, operated the

1

Wellspring nursing home. In May 2014, MCFI and Milwaukee Health Care entered into a written contract that governed their relationship. The parties later entered into an amended contract. Under the contracts, Milwaukee Health Care agreed to provide, among other things, beds for the BIRC's patients and the medical facilities used to provide BIRC services, such as a physical-therapy gym. MCFI agreed to provide the rehabilitation specialists needed to operate the BIRC, such as physical therapists and speech language pathologists.

The agreements contained detailed provisions governing billing and collection for the BIRC's services, and also governing how each of the parties would be paid their respective shares of the BIRC's collections. Under these provisions, Milwaukee Health Care was responsible for billing for the BIRC's services and collecting payments. All of the payments came from third-party payors, such as the State of Wisconsin. Payments to the BIRC were made in the name of Milwaukee Health Care and were initially deposited into Milwaukee Health Care's general bank account. However, the contracts required Milwaukee Health Care to maintain a separate checking account—the "BIRC Depository Account"—to be used "exclusively for the deposit and administration of all collections for services of the BIRC." (BIRC Agreements § 8(c).) Milwaukee Health Care was to deposit all BIRC collections into the BIRC Depository Account on a daily basis.

The contracts provided that MCFI would send monthly invoices to Milwaukee Health Care for the cost of its services. The contracts also provided that, on the 20th of every month, Milwaukee Health Care would pay to MCFI "the lesser of the full amount of the invoice or the balance in the BIRC Depository Account, less the amount to be

paid to Wellspring." (BIRC Agreements § 8(b).) The "amount to be paid to Wellspring" was defined as the "Wellspring Interim Daily Rate."

The contracts recognized that, in some months, the balance in the BIRC Depository Account would be lower than the amount of MCFI's invoice. In these months, Milwaukee Health Care was required to pay MCFI only what was left in the BIRC depository account after deduction of the Wellspring daily rate. However, the agreement contemplated that the unpaid portions of the MCFI invoices would eventually be paid from the BIRC Depository Account, either in subsequent months or during a year-end settlement process. (BIRC Agreements § 8(b).) The year-end settlement process related to a year-end payment made by the State of Wisconsin. (*See id.* § 8(e).) The agreements specified how the year-end payments would be allocated between MCFI and MHC. (*Id.*) The agreements also specified that the year-end payments would be deposited into the BIRC Depository Account, and that the parties' shares of the payments would be paid out of that account. (*Id.*)

The dispute in the present case arises because, some months after the parties established the BIRC as a unit within Wellspring, Milwaukee Health Care began using the BIRC collections to pay its own debts, in violation of its agreement with MCFI to deposit all BIRC collections into the BIRC Depository Account. It turned out that Milwaukee Health Care was in bad shape financially and needed to prioritize payments to other creditors in order to keep the nursing home running. Milwaukee Health Care used the BIRC collections to make its own lease payments, make payroll, and pay its vendors. By the end of 2015, Milwaukee Health Care virtually stopped making payments to MCFI and was using all of the BIRC collections for its own purposes.

In December 2015, MCFI commenced the present suit in state court against Milwaukee Health Care and its two members, William Nicholson and William Koski, seeking payment of its share of the BIRC collections. (The defendants removed the case to this court under the diversity jurisdiction, 28 U.S.C. § 1332. The claims against Koski have since been dismissed.) On January 25, 2016, MCFI sent Milwaukee Health Care a letter informing it that if it did not immediately pay the amounts owed to MCFI, MCFI would cease providing services to the BIRC at the close of business on February 3, 2016. Milwaukee Health Care did not pay, and MCFI stopped providing services on February 3, 2016.

During the last round of summary judgment, the defendants conceded that Milwaukee Health Care breached its contracts with MCFI by failing to pay MCFI its share of the BIRC collections. Moreover, I found that Nicholson was personally liable for conversion and civil theft based on his directing Milwaukee Health Care to use MCFI's share of the BIRC collections to satisfy Milwaukee Health Care's own debts. In the same order, I rejected MCFI's alternative legal theory for holding Nicholson personally liable for Milwaukee Health Care's breach of contract, namely, that Milwaukee Health Care's "corporate" veil should be pierced to reach Nicholson's personal assets.

Also during the last round of summary judgment, I addressed Milwaukee Health Care's counterclaim against MCFI. I determined that MCFI breached the agreements by failing to give Milwaukee Health Care 30 days' notice of its intent to terminate the BIRC contract. I also identified a genuine factual dispute concerning Milwaukee Health Care's claim that MCFI caused damage to its computers and telephones when it left the BIRC.

4

MCFI has now filed a motion for summary judgment to establish its damages and to preclude Milwaukee Health Care from recovering damages in connection with its counterclaim.

## II. DISCUSSION

MCFI claims several categories of damages. I address each category in turn and then discuss Milwaukee Health Care's counterclaim damages.

**A.    Unpaid BIRC Collections**

The parties agree that the unpaid BIRC collections total $1,903,452.47. (Defs.' Resp. to MCFI's Prop. Facts for Purposes of Summ. J. on Damages ¶ 52.) There is no dispute that summary judgment may be entered against Milwaukee Health Care for this amount. In my prior summary-judgment order, I found that Nicholson is personally liable to MCFI for the unpaid BIRC collections under theories of conversion and civil theft. Thus, MCFI may collect the amount of $1,903,452.47 from either Milwaukee Health Care or Nicholson.

In his response to MCFI's damages motion, Nicholson attempts to relitigate the issue of his personal liability to MCFI. (Br. in Opp. at 5–9.) Essentially, he seeks reconsideration of my decision granting summary judgment to MCFI on the issue of his liability for conversion and civil theft. However, he has not filed a formal motion for reconsideration. Moreover, Nicholson now advances arguments that he did not make in his brief in opposition to MCFI's motion for summary judgment on liability. As explained below, these new arguments are waived.

At the liability stage, MCFI argued that the limited liability associated with the LLC form did not shield Nicholson from personal liability for his own torts. This argument was in line with the general rule that an officer of a corporation can be jointly liable with

5

the corporation for a tort if the officer personally commits or directs the act that constitutes the tort. *See Browning-Ferris Industries of Illinois, Inc. v. Ter Maat*, 195 F.3d 953, 955–56 (7th Cir. 1999). MCFI then argued that the person who actually converted MCFI's interest in the BIRC Depository Account—a man named Ed Tabor—was acting at the direction of Nicholson personally, rather than at the direction of Milwaukee Health Care. Thus, argued MCFI, under general principles of agency law, Nicholson could be held personally liable, as Tabor's principal, for any torts committed by Tabor within the scope of his agency.

Nicholson did not, during the liability phase, dispute that Nicholson would be personally liable for conversion or civil theft if the court found that the acts committed by Tabor constituted conversion or civil theft. To the contrary, the defendants wrote the following in their brief in opposition to MCFI's liability motion:

> Defendants do not disagree with Plaintiff's analysis of the general law regarding principal-agent relationships. (ECF No. 67 at pp. 22-24.) Defendants concede that Nicholson was principal, and Tabor was Nicholson's agent. However, neither Nicholson nor Tabor performed any acts that rise to the level of tortious conversion . . . .

(Defs. Br. in Opp. to MCFI Mot. for Summ. J. on Liability at 23, ECF No. 23.)

When preparing my decision on MCFI's motion for summary judgment, I questioned whether Tabor was in fact acting on behalf of Nicholson personally, rather than on behalf of only Milwaukee Health Care, LLC. But because Nicholson did not dispute MCFI's argument on this point and instead conceded that Tabor was his agent, I did not explore this issue in my written opinion. Our system is an adversarial one, and courts normally should limit themselves to deciding the arguments that the parties have actually raised. *See, e.g., Kay v. Bd. of Educ. of City of Chicago*, 547 F.3d 736, 738 (7th Cir. 2008).

6

Now, however, in his damages brief, Nicholson attempts to take back his concession that Tabor was acting as his agent. Nicholson now claims that the statement quoted above "was not intended to concede that Tabor was acting on Nicholson's personal behalf, but rather that he was acting on behalf of [Milwaukee Health Care] as an LLC, utilizing delegated authority from Nicholson in his role as managing member." (Damages Br. at 7, ECF No. 111.) But even if that is what he meant, it does not change the fact that, during the liability phase, Nicholson did not dispute MCFI's overall argument that Nicholson would be personally liable if Tabor's redirecting the BIRC funds amounted to conversion or civil theft. His sole argument was that Tabor's using the BIRC funds to pay Milwaukee Health Care's other creditors did not "rise to the level" of conversion or civil theft. (Defs. Br. in Opp. to MCFI Mot. for Summ. J. on Liability at 23.) Having lost that argument, Nicholson now regrets not challenging MCFI's argument that Nicholson is personally liable for Tabor's torts. But it's too late for Nicholson to raise this argument. The court invested significant resources in deciding the parties' liability motions based on the arguments they actually presented. Obviously, the court would be prejudiced by having to re-decide the motion based on arguments that could have been made earlier but were not. This is why arguments presented for the first time in a motion for reconsideration are deemed waived. *See United Central Bank v. KMWC 845, LLC*, 800 F.3d 307, 309–10 (7th Cir. 2015); *Bloch v. Frischholz*, 587 F.3d 771, 784 n. 9 (7th Cir.2009); *Brooks v. City of Chicago*, 564 F.3d 830, 833 (7th Cir.2009). For these reasons, I will not consider Nicholson's argument that he is not personally liable for Tabor's actions.

7

**B.     Reimbursement for Improvements to BIRC Facilities**

MCFI next claims that Milwaukee Health Care is liable for reimbursing it for the costs of certain improvements it made to the BIRC facilities, in the amount of $48,362.66.  MCFI contends that Milwaukee Health Care agreed to reimburse it for these costs in the amended BIRC contract.  (Am. and Restd. Agmnt. § 2(i) & Ex. D, ECF No. 68-3.)  In its liability briefs, MCFI sought summary judgment on the question of whether Milwaukee Health Care breached the contract by failing to reimburse it for the costs of the facility improvements.  (MCFI Liability Br. at 7, ECF No. 67.)  Moreover, Milwaukee Health Care did not dispute that it was liable for those costs.  (Defs. Resp. to MCFI Prop. Finding of Fact ¶¶ 10–11, ECF No. 74.)  However, in my decision on the parties' motions for summary judgment on liability, I did not specifically find that Milwaukee Health Care was liable for the improvement costs.  This was an oversight on my part.

Milwaukee Health Care now argues that my failing to specifically grant summary judgment to MCFI on the issue of Milwaukee Health Care's liability for the costs of the improvements means that I cannot now include those costs in the damages calculation.  (Damages Br. at 9.)  However, because Milwaukee Health Care did not, in its liability brief, dispute that it was liable for the improvement costs, I should have granted summary judgment to MCFI on that issue.  Moreover, Milwaukee Health Care does not, in its damages brief, argue that MCFI is not entitled to summary judgment as to liability on that issue.  Nor can I see any reasonable argument that Milwaukee Health Care could make on this point.  The contract identifies the specific improvements that MCFI will make to the BIRC facilities and states that Milwaukee Health Care will reimburse MCFI "for amounts it has expended relative to these items" during the first twelve

8

months of operations. Milwaukee Health Care concedes that it has not yet reimbursed MCFI for these expenditures. (Defs.' Resp. to MCFI's Prop. Facts for Purposes of Summ. J. on Damages ¶ 54, ECF No. 112.) Thus, I clarify that MCFI is entitled to summary judgment as to liability on this issue.

As for damages, it is undisputed that MCFI expended $48,362.66 to make the specified improvements. (*Id.*) Milwaukee Health Care notes that the contract estimated that the costs of the improvements would be only $34,500. (Am. and Restd. Agmnt., Ex. D, ECF No. 68-3.) However, Milwaukee Health Care does not develop an argument in favor of interpreting the contract to limit MCFI's reimbursement to $34,500. Moreover, the contract is clear that MCFI is entitled to be reimbursed for the actual costs of the improvements. Obviously, an estimate is only an estimate, and the contract states that Milwaukee Health Care will reimburse MCFI for the actual amounts it expended. Because it is undisputed that MCFI actually expended $48,362.66 to make these improvements, I will include that amount in MCFI's damages award against Milwaukee Health Care for breach of contract.[1]

**C.    Prejudgment Interest**

MCFI next claims that it is entitled to prejudgment interest against both Nicholson and Milwaukee Health Care. With respect to Nicholson, MCFI is entitled to recover, as part of its damages for conversion, interest on the value of the property converted until the date of trial. *See Mgmt. Computer Servs., Inc. v. Hawkins, Ash, Baptie & Co.*, 206 Wis.2d 158, 188 (1996). With respect to Milwaukee Health Care, MCFI is entitled to recover prejudgment interest on its claim for breach of contract if it can show that its

---

[1] The parties agree that Nicholson is not personally liable for the improvement costs because they do not relate to the funds that he converted or stole.

damages are "liquidated or liquidable," which means that damages for the breach may be reasonably ascertained by the breaching party. *Teff v. Unity Health Plans Ins. Corp.*, 265 Wis. 2d 703, 732 (Ct. App. 2003). The rationale underlying this rule is that, where damages are either liquidated or may be reasonably ascertained by calculation, the defendant can avoid the accrual of prejudgment interest by simply tendering to the plaintiff a sum equal to the amount of damages. *Id.* at 732–33.

As discussed above, MCFI is entitled to two categories of compensatory damages: the unpaid BIRC collections and the costs of making improvements to the BIRC facilities. With respect to the unpaid BIRC collections, Nicholson is liable for prejudgment interest until the date of trial, as the BIRC collections are what he converted. As for Milwaukee Health Care, the question is whether MCFI's share of the BIRC collections was reasonably ascertainable. The BIRC contracts set out a formula for determining how the BIRC collections were to be divided between MCFI and Milwaukee Health Care. Under this formula, Milwaukee Health Care was obligated to pay to MCFI, on the 20th of every month, the balance left in the BIRC Depository Account less the Wellspring daily rate, which was also defined in the agreement and reasonably calculable. The contracts also contained instructions for paying each party their respective shares of the year-end payments from the State of Wisconsin that became part of the BIRC collections. MCFI argues that Milwaukee Health Care had all of the information it needed to calculate the BIRC collections owed to MCFI as soon as MCFI demanded payment. In its brief in opposition to MCFI's damages motion, Milwaukee Health Care does not meaningfully dispute that Milwaukee Health Care had all of the information it needed to calculate MCFI's share of the BIRC collections. (Damages Br. at 10–11, ECF No. 111.) Thus, I find that the unpaid BIRC collections

were liquidated or liquidable, and that Milwaukee Health Care is liable for prejudgment interest on these amounts.

In its damages brief, Milwaukee Health Care does raise issues concerning the dates on which prejudgment interest should start to run. Milwaukee Health Care seems to believe that MCFI is claiming prejudgment interest for periods before it initiated this lawsuit and/or demanded payment. However, Milwaukee Health Care's belief is mistaken. MCFI commenced this lawsuit in state court on December 8, 2015, and demanded payment for all unpaid BIRC collections at that time. In its damages motion, MCFI calculates prejudgment interest on all BIRC collections that were unpaid as of December 2015 based on a start date of January 20, 2016—more than a month after MCFI made a demand for payment. (Damages Br. at 10–11, ECF No. 105.) MCFI then uses later start dates for BIRC payments that did not become due until later. First, it uses March 20, 2016 as the start date for prejudgment interest on the BIRC payments owed to MCFI for January and February 2016, as well as on MCFI's share of the year-end payment that was payable to MCFI in March 2016. Second, MCFI uses March 20, 2017 as the start date for prejudgment interest on MCFI's share of a year-end payment that was payable to MCFI in March 2017. Milwaukee Health Care does not dispute that the amounts owed to MCFI were reasonably ascertainable on these respective dates. Moreover, all of the dates were after MCFI commenced this suit and made clear that it was demanding payment of its share of the BIRC collections. Accordingly, I will grant summary judgment to MCFI on the issue of prejudgment interest for the BIRC collections and will use the calculations contained in MCFI's damages brief on pages 10 to 11. (The calculations are based on an interest rate of 5% per annum, and Milwaukee

Health Care does not dispute that this is the appropriate rate to use for both the contract and conversion claims.)

The remaining issue is whether MCFI is entitled to prejudgment interest on the facility-improvement costs. MCFI contends that the BIRC contract required Milwaukee Health Care to reimburse it for these costs by June 20, 2016. Milwaukee Health Care does not dispute that its reimbursement payment was due by this date, but it contends that MCFI did not disclose the amount of its expenditures until it filed its damages brief. However, during discovery in this case, Milwaukee Health Care served an interrogatory on MCFI asking it to itemize its damages. On May 17, 2016, MCFI responded to this interrogatory. Its response included a demand for reimbursement for facilities improvements in the amount of $48,363.00, which is the amount of damages that I have awarded. (ECF No. 121-4 at p. 4 of 6.) Also in May 2016, MCFI provided Milwaukee Health Care with copies of the invoices it used to calculate this amount. (Third Trigg Decl. ¶ 6, ECF No. 121.) Thus, I find that prejudgment interest on the facilities-improvements award will run from June 20, 2016. By that date, MCFI had made a demand for payment, and the amount due was reasonably ascertainable.

**D.    Investigation and Litigation Costs**

MCFI next seeks to recover its investigation and litigation costs from Nicholson in connection with its claim for civil theft. The civil-theft statute provides, in relevant part, that a prevailing plaintiff may recover "[a]ll costs of investigation and litigation that were reasonably incurred." Wis. Stat. § 895.446(3)(b). The Wisconsin Supreme Court has interpreted "costs of investigation and litigation" to include reasonable attorneys' fees. *Estate of Miller v. Storey*, 378 Wis.2d 358, 365 (2017).

Nicholson first argues that the following provision of the BIRC contract prevents MCFI from recovering attorneys' fees under the civil-theft statute:

> **Attorneys' Fees.** In the event either party engages in litigation involving any controversy, dispute, or claim arising out of or in connection with any of the terms or provisions contained in this [Agreement], each party shall be responsible for all of its costs incurred, including attorneys' fees and expenses.

(Am. and Restd. Agmnt. § 17.) However, a party wishing to enforce a contract must either be a party to that contract or a third-party beneficiary. *Becker v. Crispell-Snyder, Inc.*, 316 Wis. 2d 359, 366 (Ct. App. 2009). As Nicholson successfully argued during an earlier stage of this case, he is not a party to the BIRC agreements. (Order of June 9, 2016, at 6–7, ECF No. 38.) Nicholson has not argued that he is a third-party beneficiary of those agreements. Thus, Nicholson may not enforce the attorneys' fees provision of the amended BIRC agreement.

Nicholson next argues that MCFI improperly seeks to recover from him the attorneys' fees and expenses that it incurred in litigating claims other than civil theft. I agree with Nicholson on this point. The civil-theft statute grants attorneys' fees to a prevailing plaintiff as part of the remedy for the cause of action created by the statute. It does not provide that the prevailing plaintiff also may recover attorneys' fees that were incurred in connection with other claims that the plaintiff may have joined with the claim for civil theft. Thus, the civil-theft statute does not allow MCFI to recover the attorneys' fees it incurred in litigating its claims against Milwaukee Health Care or William Koski. Nor does it entitle MCFI to the fees it incurred in arguing that Nicholson is personally liable under other legal theories, such as piercing the corporate veil.

However, some of MCFI's other claims and legal theories are so related to the civil-theft claim that it is not possible or practicable to segregate the fees and expenses

13

incurred in litigating each of them. To the extent that is the case, MCFI is entitled to recover its fees. *See Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983). Here, the exact same facts underlie MCFI's claim for breach of contract against Milwaukee Health Care and its claims for conversion and civil theft against Nicholson, at least insofar as the breach-of-contract claim seeks payment of the BIRC collections. Moreover, many of the facts used to prove civil theft were also used to support MCFI's unsuccessful argument that Milwaukee Health Care's corporate veil should be pierced. MCFI is entitled to recover the fees and expenses it incurred in developing these facts. This likely will account for most of MCFI's requested fee award. However, MCFI must make some attempt to separate out the fees and expenses it incurred in connection with its unrelated claims, including its claim for recovery of the costs of facility improvements and the claims it previously asserted against Koski. *Id.* at 435.

At this point, I will grant summary judgment to MCFI on the issue of whether Nicholson is liable for the attorneys' fees and expenses that MCFI reasonably incurred in prosecuting its claim for civil theft. However, I cannot quantify the award of fees and expenses until MCFI removes the fees and expenses that it incurred in litigating claims that did not depend on the same facts as the civil-theft claim.

E.     **Exemplary Damages for Civil Theft**

MCFI intends to seek exemplary damages for civil theft. *See* Wis. Stat. § 895.446(3)(c). However, as MCFI acknowledges, Nicholson has demanded a jury trial, and the amount of exemplary damages is a question for the jury. Accordingly, this is not a matter that I may resolve on summary judgment.

**F.     Counterclaim Damages**

Finally, MCFI argues that Milwaukee Health Care cannot recover damages in connection with its counterclaim. During the liability phase of this case, I found that two aspects of Milwaukee Health Care's counterclaim survived summary judgment: (1) its claim that MCFI breached the provision in the BIRC contract requiring MCFI to give Milwaukee Health Care 30 days' notice of its intent to terminate the contract, and (2) its claim that MCFI damaged some of its phones and computers.

In my last order, I found that Milwaukee Health Care's damages for breach of the notice provision would be the revenues it would have earned had MCFI continued to perform its obligations under the agreement for the remainder of the 30-day notice period. (Order of Dec. 8, 2017 at 24.) These revenues would have consisted of the Wellspring daily rate, which was the rate that Milwaukee Health Care was entitled to retain for its services under the BIRC contract. In its damages motion, MCFI argues that Milwaukee Health Care actually earned more than the Wellspring daily rate during the notice period because it was able to keep 100% of the payments made for those patients who remained in the BIRC after MCFI stopped providing services, rather than only the Wellspring daily rate. MCFI contends that, over the remainder of the 30-day period, Milwaukee Health Care actually earned $56,000 more than it would have earned had it been limited to receiving the Wellspring daily rate.

Milwaukee Health Care does not dispute that it was able to retain the full payment for each patient after MCFI stopped providing services. It notes, however, that its expenses "increased significantly" after MCFI stopped providing services, as it had to pay for the services that MCFI would have provided. (Harris Decl. ¶ 18, ECF No. 117.) But Milwaukee Health Care makes no attempt to show that this increase in its expenses

15

was greater than the increase in its share of the payments, such that it netted less than the Wellspring daily rate for the remainder of the 30-day notice period. Thus, I can see no genuine issue of material fact here. Based on the current record, a reasonable jury could not conclude that MCFI's breach of the notice provision caused Milwaukee Health Care to earn less than the Wellspring daily rate for the remainder of the notice period.

Milwaukee Health Care also notes that MCFI discharged some BIRC patients shortly before it stopped providing services, and that it was deprived of the revenues it would have earned had these patients not been discharged. (Harris Decl. ¶¶ 8–13.) But Milwaukee Health Care has not developed an argument in support of its apparent claim that MCFI had no legal right to discharge these patients. It points to no provision of the BIRC contract that prohibited MCFI from discharging patients as it saw fit. Moreover, Milwaukee Health Care points to no admissible evidence showing that the discharges were not medically appropriate. Finally, Milwaukee Health Care makes no attempt to calculate the Wellspring daily rate that it might have earned in connection with these payments during the remainder of the 30-day notice period and show that it exceeded the additional amounts (above the daily rate) it was able to earn in connection with the patients that remained in the unit during the remainder of the 30-day period. Thus, MCFI is entitled to summary judgment on any claim for damages based on improperly discharged patients.

Milwaukee Health Care also contends that MCFI is liable for the costs it incurred in setting up its own brain-injury unit in 2016. Milwaukee Health Care claims that it "incurred over $900,000 in additional startup costs to reconstitute a brain injury program." (Damages Br. at 18.) However, these costs are not attributable to MCFI's breach of the BIRC contract. The contract did not grant Milwaukee Health Care a right

to MCFI's perpetual assistance in running a brain-injury unit within its nursing home. Rather, the contract allowed MCFI to terminate the agreement for cause on 30 days' notice. Milwaukee Health Care has never disputed that MCFI had cause to terminate the agreement. Although MCFI breached the contract by failing to give the full 30 days' notice, Milwaukee Health Care's damages for this breach are limited to the profits it would have made during the 30-day period had MCFI continued to perform its obligations. As discussed above, Milwaukee Health Care has failed to submit evidence from which a reasonable jury could conclude that it lost profits during this time period.

Finally, Milwaukee Health Care argues that MCFI's abrupt departure from the BIRC caused it "reputational damage" within the healthcare community. (Damages Br. at 18.) The sole evidence it offers in support of this claim is the Declaration of Sue Harris, which states that hospital administrators told her that they were wary of placing patients at Wellspring due to MCFI's abrupt departure. (Harris Decl. ¶ 20.) However, Harris's statement about what other hospital administrators told her is hearsay and therefore inadmissible. Fed. R. Evid. 802. Accordingly, Milwaukee Health Care cannot recover damages for reputational harm.

The remaining issue is Milwaukee Health Care's claim that MCFI damaged some of its phones and computers. In my prior order, I found that there was a genuine issue of material fact as to whether MCFI actually damaged any phones or computers that belonged to Milwaukee Health Care. MCFI continues to dispute that it damaged any phones or computers, but it contends that the cost of replacing the damaged equipment is less than the additional revenues Milwaukee Health Care received, above the Wellspring daily rate, for treating the patients that remained in the BIRC. But this argument is not sound. Even if MCFI's breach of the notice provision allowed

Milwaukee Health Care to earn additional income, MCFI cannot use that additional income to offset its liability for damaging Milwaukee Health Care's property. Damaging the property was a separate unlawful act from breaching the notice provision. Milwaukee Health Care is entitled to be reimbursed for the damaged property regardless of whether MCFI's separate breach of the notice provision resulted in a net gain. Thus, I cannot enter summary judgment on Milwaukee Health Care's claim for damage to its phones and computers.

### III. CONCLUSION

In sum, I find that MCFI is entitled to the following damages: (1) $1,903,452.47 in unpaid BIRC collections, plus prejudgment interest at 5% per annum, calculated in accordance with the start dates on pages 10–11 of ECF No. 105, against both Milwaukee Health Care and Nicholson; (2) $48,362.66 in reimbursement for facilities improvements, plus prejudgment interest at 5% per annum starting on Jun 20, 2016, against Milwaukee Health Care only; and (3) costs of the investigation and litigation of the civil-theft claim, to be quantified in future proceedings, against Nicholson only. I also grant summary judgment to MCFI on Milwaukee Health Care's counterclaim for breach of the notice provision, as Milwaukee Health Care has not shown that a jury could reasonably find that the breach caused it to suffer damages. MCFI's motion for summary judgment as to the value of the damaged phones and computers is denied.

Accordingly, **IT IS ORDERED** that MCFI's motion for summary judgment on damages (ECF No. 96) is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED** that MCFI's motion to seal certain exhibits supporting its motion for summary judgment on damages (ECF No. 95) is **GRANTED**.

Dated at Milwaukee, Wisconsin, this 11th day of June, 2018.

s/Lynn Adelman
LYNN ADELMAN
District Judge